[Civ. No. 66562. Second Dist., Div. Four. July 17, 1984.]

CALIFORNIA ARCO DISTRIBUTORS, INC., et al.,
Plaintiffs and Respondents, v.
ATLANTIC RICHFIELD COMPANY, Defendant and Appellant.

**COUNSEL**

Smaltz & Neelley, Donald C. Smaltz, Robert L. Hess, Leighton M. Anderson and Paul J. Richmond for Defendant and Appellant.

Shapiro, Laufer, Krane, Jacobson & Posell, Shapiro, Laufer, Posell & Close, David Laufer, Kenneth P. Roberts and Douglas L. Carden for Plaintiffs and Respondents.

**OPINION**

**McCLOSKY, J.**—On October 5, 1982, defendant Atlantic Richfield Company (ARCO) appealed from the preliminary injunction issued on October 1, 1982, in favor of plaintiffs California ARCO Distributors, Inc. (CADI) and Little Oil Company, Inc. (Little). (2d Civ. No. 66562.)

On June 1, 1983, ARCO appealed from an order dated April 19, 1983, wherein the trial court denied ARCO's motion to dissolve the preliminary

injunction. Said motion was made during the pendency of the appeal from the preliminary injunction. (2d Civ. No. B002911.)

On July 1, 1983, by order of this court, we consolidated these appeals.

## ISSUES ON APPEAL

The following issues are presented for determination in 2d Civil No. 66562:

1. Is Business and Professions Code section 20999.1,[1] under the authority of which the preliminary injunction was issued, preempted by the federal Petroleum Marketing Practices Act (PMPA) (15 U.S.C. §§ 2801-2806)?

2. If section 20999.1 is preempted, was the preliminary injunction properly issued under the authority of the PMPA?

3. Assuming, arguendo, that section 20999.1 is preempted by the PMPA, were ARCO's material modifications of its branded distributor franchise agreements properly enjoined under the Franchise Investment Law (FIL) (Corp. Code, §§ 31000-31516) or as unlawful business practices (§ 17200)?

4. Was the preliminary injunction issued in violation of ARCO's procedural due process rights?

5. Is there substantial evidence to support the issuance of the preliminary injunction?

In 2d Civil No. B002911, the sole question for resolution is whether the trial court had jurisdiction to consider the merits of ARCO's motion to dissolve the preliminary injunction.

## GENERAL BACKGROUND

CADI is a California corporation comprised of ARCO distributors doing business in California. Little is a California corporation and is an ARCO distributor. Each member of CADI and Little entered into a "Branded Distributor—Gasoline Agreement" with ARCO Petroleum Products Company, a division of ARCO, a Pennsylvania corporation, for the purchase of gasoline.

---

[1] All statutory references herein are to the Business and Professions Code unless stated otherwise.

As branded distributors, the members of CADI including Little performed the same wholesale and retail functions performed by ARCO including, among other things, the sale and distribution of gasoline to service stations, commercial accounts, industrial accounts and farm accounts, the delivery of gasoline by tank truck vehicles to these accounts, and the performance of all administrative and marketing services to implement these functions.

Under the "Branded Distributor—Gasoline Agreement" it had been among ARCO's business practices, as well as the parties' course of dealings, (1) to compensate branded distributors with a reasonable hauling allowance for costs incurred in hauling ARCO branded gasoline from ARCO's gasoline distribution terminals where gasoline is purchased to branded distributors' places of business; (2) to grant branded distributors a reasonable line of credit based upon need, creditworthiness, volume of purchases, security and/or posted letter of credit and record of payment; and (3) to allow branded gasoline distributors to pay for gasoline on "10th-prox" terms. By usage "10th-prox" terms means that purchases made in one month are not due and payable until the 10th day of the following month.

On or before June 23, 1981, ARCO eliminated the hauling allowance to Little and other CADI members.

On or about May 1, 1982, ARCO announced that, effective at the end of July 1982, branded distributors' credit line on gasoline purchases would be subject to "receipt of invoice" payment terms. This modification reduced the time within which payment had to be made from approximately 40 days to approximately 7 days.

On September 1, 1982, CADI and Little filed a verified complaint for declaratory and injunctive relief against ARCO. Counts I, II and III were asserted only on behalf of Little and alleged violations of the FIL. Count IV was asserted by CADI and Little and alleged unfair business practices.

Also on September 1, CADI and Little filed an ex parte application for a temporary restraining order and an order to show cause re preliminary injunction. The trial court issued an order to show cause, but did not issue a temporary restraining order.

On September 30, 1982, the application of CADI and Little for a preliminary injunction was heard. At this hearing, the trial court granted relief on the basis of section 20999.1 which provides:

"Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel, or fail to or refuse to renew any existing franchise without good cause.

"As used in this section good cause is limited to the following:

"(a) The gasoline dealer or petroleum distributor failed to comply with essential and reasonable requirements of the franchise agreement;

"(b) The gasoline dealer or petroleum distributor failed to act in good faith in carrying out the terms of the franchise; or

"(c) The franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located, provided that the franchisor pays the gasoline dealer the current wholesale market value for all qualifying equipment and supplies purchased by the gasoline dealer from the franchisor or affiliate of the franchisor. This subdivision shall only apply to those gasoline dealer franchises which are entered into or renewed on or after January 1, 1979. As used in this subdivision, 'qualifying equipment and supplies' means all equipment and supplies purchased by the gasoline dealer from the franchisor or an affiliate of the franchisor which is free and clear of all liens, security interests and other encumbrances, valued on a first-in, first-out basis, evidenced by receipted invoices, and is (i) in first-class and resalable condition, (ii) in the original packages or containers and (iii) bears the original labels and trademarks, and (iv) the goods display no evidence of deterioration. This subdivision shall not be construed to create any priority over any other debt between the parties to the franchise arising from the same franchise agreement.

"(d) For other legitimate business reasons (except that a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for good will)."

In its opposition to CADI's and Little's application for a preliminary injunction, ARCO maintained that the challenged modifications of its business practices were expressly authorized under the terms of the branded distributor gasoline agreement which it entered into with the members of CADI, including Little. The trial court noted that ARCO's argument "sounds good" until the "Notwithstanding the terms of any franchise" language of section 20999.1 is considered.

In granting the injunctive relief sought, the trial court stated: ". . . I believe the inevitable result of the conduct undertaken is to diminish or terminate ARCO's wholesale distributors in an effort to build up their retail

sales." The trial court then further explained: "I don't say that there is anything wrong with that as an ultimate goal as a business practice or as a business decision, but there are certain constraints imposed by statute, particularly section 29999.1[2] [*sic*], . . . [¶] . . . [¶] I believe that the inevitable inference I must draw is that the combination of these changes and practices we have been talking about is to cause a termination of the distributorships and that therefore the statutes are triggered off."

At the hearing, ARCO argued that section 20999.1 was preempted by the PMPA. The trial court disagreed stating, ". . . I don't see anything in the applicable federal statute, . . . to denigrate from [section 20999.1]" and "I don't think I would deny a preliminary injunction on the basis of preemption."

On October 1, 1982, the trial court issued a preliminary injunction wherein it ordered, among other things, "that during the pendency of this action, ARCO, its officers, agents and employees, and each of them, and all persons acting under, and in concert with, or for it, shall be and are hereby enjoined and restrained from:

"(1) Reducing the line of credit ARCO made available to LITTLE and to each member of CADI prior to September 1, 1982;

"(2) Changing the payment terms for the purchase of ARCO branded motor gasoline by LITTLE and each member of CADI from "10th prox.";

"(3) Eliminating the hauling allowance paid by ARCO to LITTLE and to each member of CADI prior to the elimination thereof on or about June 1, 1981."

DISCUSSION

I

2d Civil No. 66562

A

■ "The pre-emption doctrine, which has its roots in the Supremacy Clause, U. S. Const., Art. VI, cl. 2, requires us to examine congressional

---

[2]While the trial judge erroneously referred to section 20999.1 as section 29999.1 throughout the hearing, it is readily apparent that he was referring to section 20999.1.

intent. Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones* v. *Rath Packing Co.*, 430 U.S. 519, 525 (1977)." (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141, 152-153 [73 L.Ed.2d 664, 674-675, 102 S.Ct. 3014].)

In enacting the PMPA, Congress explicitly addressed the preemption issue. Section 2806 (a) of title 15 of the United States Code provides: "(a) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter."

That Congress did not intend to exclusively occupy the field with regard to the termination and nonrenewal of petroleum franchises is made clear by the language of 15 United States Code section 2806 (a). State legislation in the area does not, therefore, violate the supremacy clause if it is "the same as" the PMPA.

 ■ Our nation's high court has noted: "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142-143 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941)." (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta, supra,* 458 U.S. at p. 153 [73 L.Ed.2d at p. 675].) "Making this determination 'is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict.' *Perez* v. *Campbell,* [(1979) 402 U.S. 637,] 644. And in deciding whether any conflict is present, a court's concern is necessarily with 'the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted.' *San Diego Building Trades Council* v. *Garmon,* [(1959) 359 U.S.

236,] 243." (*Chicago & N. W. Tr. Co.* v. *Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 317-318 [67 L.Ed.2d 258, 265, 101 S.Ct. 1124].)

Appellant maintains that the substantive provisions of section 20999.1 are not "the same as" the substantive provisions of the PMPA.[3] It urges that there are many substantive differences as well as a multitude of differences in language between the two.

With regard to the differences in each law, we note that if a mere difference in words sufficed to preempt state law, then section 20999.1 would surely be preempted. ▮ However, a "mere conflict in words is not sufficient" to establish federal preemption. (*Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 10-11, 99 S.Ct. 802].) For a state statute to be consistent with a federal law, it is not necessary that it parrot that federal law word for word. In determining whether state and federal law conflict, we must "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." (*Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 526 [51 L.Ed.2d 604, 614, 97 S.Ct. 1305].) As the *Hisquierdo* court observed, "[t]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." (*Hisquierdo* v. *Hisquierdo, supra,* 439 U.S. 572, 583 [59 L.Ed.2d 1, 12].)

With regard to claimed substantive differences between section 20999.1 and the PMPA, we do not in this opinion undertake the evaluation of section 20999.1 as a whole. Hence, we do not pass on the validity of those provisions of section 20999.1 that have no applicability to this appeal.

---

[3]CADI and Little contend, in essence, that ARCO waived the defense of preemption because it failed to plead it as an affirmative defense in its answer to the complaint.

No claimed violation of section 20999.1 appears in CADI's and Little's complaint, and it does not appear from the record that ARCO filed its answer before the hearing on CADI's and Little's application for a preliminary injunction.

Prior to the hearing, CADI and Little filed a "Statement of Legal Position." Therein, they alleged for the first time that the changes imposed by ARCO constitute constructive termination of their franchise in violation of section 20999.1. Thereafter, in its memorandum of points and authorities in opposition to the application of CADI and Little for a preliminary injunction, ARCO expressly claimed that section 20999.1 was preempted by the PMPA. Because ARCO raised the defense of preemption at the earliest possible moment after learning that CADI and Little claimed a violation of section 20999.1 and because preemption was also raised and argued during the hearing, we find no waiver and conclude that this contention is without merit.

■ State and federal laws should be accommodated and harmonized where possible so that preemption can be avoided.[4] We may not, however, give a statute a meaning to which it is not reasonably susceptible. Nor may we rewrite a statute. It is a fundamental rule of statutory construction that a statute must be interpreted so as to give effect to the intent of the Legislature and, therefore, the purpose of the law. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [177 Cal.Rptr. 325, 634 P.2d 352].)

Under section 20999.1, good cause for the termination of a franchise exists (1) when a franchisee fails to "comply with essential and reasonable requirements of the franchise agreement," (2) when a franchisee fails "to act in good faith in carrying out the terms of the franchise," (3) when a "franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located" (with one condition and a qualification), and (4) when there are "other legitimate business reasons."[5]

A review of these grounds for termination quickly reveals that the first three have no applicability in this case. Hence, we need not, and do not, decide whether they are preempted by the PMPA. ■ "The federal Act does not preempt all state laws regulating petroleum franchises; rather it merely supplants those provisions which are different from the PMPA. The language of the federal Act prohibiting states from enforcing 'any provision of any law' which is different from the PMPA, 15 U. S. C. § 2806(a), manifests a Congressional intent to treat state laws which govern petroleum franchises as severable." (*Ted's Tire Service Inc.* v. *Chevron U. S. A. Inc.* (D.Conn. 1979) 470 F.Supp. 163, 165.)

At the hearing on the application for preliminary injunction, the trial court noted, ". . . I draw the fairly strong conclusion from the evidence presented that ARCO's conduct vis-à-vis these distributors was deliberately intended

---

[4]See generally *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 93 [160 Cal.Rptr. 733, 603 P.2d 1329], cert. den., *City of Los Angeles* v. *Greater Westchester Homeowners Assn.* (1980) 449 U.S. 820 [66 L.Ed.2d 22, 101 S.Ct. 77].)

[5]With regard to this fourth ground, section 20999.1 parenthetically states that "a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for good will."
We need not decide whether such termination coupled with reasonable compensation is valid under the PMPA because we are not dealing with that type of termination.

and designed to drive them out of business." From this statement, we can reasonably infer that the trial court issued the injunction because it found that the changes made by ARCO were not made for any legitimate business reason within the meaning of section 20999.1 but rather were, as a practical matter, made for the purpose of terminating their franchises. Therefore, our inquiry regarding the constitutionality of section 20999.1 is limited solely to whether "legitimate business reasons" is a ground for termination under the federal act.

The parties have not directed our attention to, and our research has not disclosed, any case interpreting the term "other legitimate business reasons" as it appears in section 20999.1. A comparison of this ground with its federal counterpart discloses that the state ground, while somewhat similar to, is not "the same as" the federal one.

In the PMPA, the grounds for termination of a franchise are set forth in 15 United States Code section 2802 (b)(2) (A) through (E). The PMPA's counterpart to our state ground of "other legitimate business reasons" is set forth in section 2802 (b)(2)(C) which provides:

"(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, [is a ground for termination of a franchise] if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

"(i) not more than 120 days prior to the date on which notification of termination of nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

"(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title."

The specific time limits of 15 United States Code section 2802(b)(2)(C) which create a time frame within which a franchisor must acquire actual or constructive notice of the occurrence of an event prior to the time that notice of termination is given were "imposed to preclude a franchisor from basing termination or non-renewal upon old and long forgotten events." (1978 U.S. Code Cong. & Admin. News, at p. 892.)

Section 20999.1 contains no comparable time limitations. Nevertheless, its requirement that a business reason be legitimate impliedly requires the

franchisor to actually terminate within a reasonable time after learning about a business reason justifying termination. That follows from the fact that an unjustifiable or unwarranted delay in terminating will negate the legitimacy of a business reason proffered for termination. This implicit requirement of reasonableness does not, however, shield section 20999.1 from a successful preemptive attack.

Section 20999.1, as originally enacted, became effective on January 1, 1976, prior to enactment or effective date of the PMPA. (Stats. 1975, ch. 640, p. 1389, § 1.) In section 2 of Statutes 1975, chapter 640, page 1390, the state Legislature enunciated its intent in enacting section 20999.1 thusly: "The Legislature finds and declares that distribution and sales through franchise arrangements of gasoline in the State of California affects the general economy of the state, the public interest and the public welfare. Competition and nondiscriminatory practices are essential to the fair and efficient functioning of a free market economy. Gasoline and other petroleum products should be marketed in the manner most beneficial to the consumer, and to prevent the disruption of vital energy sources. To prevent such disruptions it is necessary to define the relationships and responsibilities of parties to gasoline franchise agreements, and provide a remedy to gasoline dealers whose franchises are terminated, or not renewed."

Hence, section 20999.1 represented "an attempt on the part of the Legislature to correct certain abuses it perceived to exist in franchise arrangements between petroleum distributors and retail gasoline dealers." (*Union Oil Co.* v. *Moesch* (1979) 88 Cal.App.3d 72, 75-76 [151 Cal.Rptr. 517].) Its purpose was the protection of franchises. Section 20999.1 "was designed to prevent franchisors from terminating or refusing to renew franchises where the agreement gives a right to do so arbitrarily or permits cancellation for a cause that is inconsistent with the grounds set forth in the section." (*Witt* v. *Union Oil Co.* (1979) 99 Cal.App.3d 435, 438 [160 Cal.Rptr. 285].)

The PMPA, too, was enacted "to provide for the protection of franchised distributors and retailers of motor fuel." (1978 U.S. Code Cong. & Admin. News, at p. 873.) "Congress enacted the PMPA in an effort to protect 'franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.' [Citation.] . . . Congress designed the PMPA to allay three specific concerns: that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable

expectations of the parties that the franchise relationship will be a continuing one. [Citation.]" (*Brach* v. *Amoco Oil Co.* (7th Cir. 1982) 677 F.2d 1213, 1216.)

Unlike section 20999.1, however, PMPA was also enacted for the benefit of franchisors. "While one purpose of the Act is to protect the reasonable expectations of the 'franchisee' in the continuation of a motor fuel franchise relationship, the legislative history also discloses that Congress intended to recognize the 'legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship . . . upon certain changes in circumstances,' and to provide 'flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences.' S.Rep. No. 95-731, 95th Cong., 1st Sess. 19, *reprinted in* [1978] U.S. Code Cong. & Ad. News 873, 877." (*Ames* v. *Texaco, Inc.* (W.D.Mich. 1983) 568 F.Supp. 1317, 1321, app. dism. (6th Cir. 1984) 727 F.2d 1108.)

Additionally, the PMPA was enacted to promote nationwide uniformity of laws relating to the termination or nonrenewal of a franchise. The legislative history of the PMPA discloses the concerns of the Congress thusly:

"Numerous States have initiated various legislative actions to address these petroleum product franchising problems. These actions have, unfortunately, resulted in an uneven patchwork of rules governing franchise relationships which differ from State to State.

"Needed is a single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises and the notice which franchisors must provide franchisees prior to termination of a franchise or non-renewal of a franchise relationship. Such a set of rules would clearly define the rights and obligations of the parties to the franchise relationship in the crucial area of termination of a franchise or non-renewal of the franchise relationship." (1978 U.S. Code Cong. & Admin. News, at p. 877.)

While the implicit requirement of section 20999.1 that a franchisor actually terminate within a reasonable time after learning about a business reason justifying termination serves to ensure that franchisees are protected from having their franchises terminated because of a stale event, there is no guarantee that a time limitation which is reasonable under state law will be "the same as" the limitations imposed in 15 United States Code section 2802. Moreover, from the concept of "reasonableness" emanates the notion that what is reasonable will vary depending upon the particular circumstan-

ces of each case. This would impede the PMPA's purpose of promoting nationwide uniformity of laws relating to the termination or nonrenewal of a franchise.

Additionally, the time limits set forth in 15 United States Code section 2802(b)(2)(C) were also designed "to provide adequate opportunity for a franchisor to evaluate potential grounds for franchise termination or non-renewal prior to making a determination whether to terminate the franchise or not to renew the franchise relationship." (1978 U.S. Code Cong. & Admin. News, at p. 892.) In the absence of intent that section 20999.1 was enacted for the protection of franchisors, we cannot read into section 20999.1 a time limit that will serve the purposes sought to be achieved by the PMPA.[6]

■ Because 20999.1, subdivision (d) is not the same as the PMPA, it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. (*Hines* v. *Davidowitz* (1941) 312 U. S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399].) That portion of section 20999.1 that we scrutinize today is preempted by the PMPA.[7] "An injunction based on an unconstitutional [statute] exceeds the issuing court's jurisdiction."[8]

---

[6]Respondent contends that our state Legislature intended section 20999.1 to be interpreted and applied consistently with the PMPA because in 1981 the definitions set forth in the PMPA (15 U.S.C. § 2801) were incorporated into section 20999.

At the time that section 20999.1 was enacted, section 20999 which sets forth the definitions of terms used in chapter 7.5 of the Business and Professions Code relating to franchises was also enacted. In 1981, section 20999 was repealed and a new section 20999, also containing definitions, was enacted. With a few exceptions, the definitions mirror those contained in 15 United States Code section 2801. The Legislative Counsel's Digest to Assembly Bill No. 433 (1981-1982 regular session) as amended by the assembly and the senate states that the bill would revise the definition of franchise so that it would be "in conformance with that provided under the federal Petroleum Marketing Practices Act (Public Law 95-197)."

At first blush, respondent's argument seems plausible, but upon reflection it does not hold up. At the time that section 20999 was amended 20999.1, too, was amended. The amendment to section 20999.1, however, which consisted solely of adding the phrase "or fail to" before the phrase "or refuse to renew" did not effect a change in the substance of, or the intent underlying, section 20999.1.

[7]Under 15 United States Code section 2802, subdivision (b)(1)(A)-(B), a franchisor may terminate a franchise if the notification requirements set forth in 15 United States Code section 2804 are met and if said termination is based upon one of the grounds delineated in 15 United States Code section 2802, subdivision (b)(2). Neither section 20999.1 nor any other section in chapter 7.5 of the Business and Professions Code relating to franchises contains a requirement of notification prior to termination.

We need not, and do not, decide whether the absence of a notification requirement would be further reason for preemption. Nor need we decide whether any other grounds warrant preemption.

[8]Jurisdiction as the term is used here, has a broader meaning than subject matter jurisdiction or jurisdiction over the person. It refers to the trial court's power to act except in a particular manner or to give certain relief. (See *Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc.* (1977) 73 Cal.App.3d 376, 388 [140 Cal.Rptr. 757], fn. 9 and accompanying text.)

(*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 507 [134 Cal.Rptr. 668, 556 P.2d 1119].) Therefore, the preliminary injunction, which was based on that portion of section 20999.1 that we hold to be unconstitutional today, must be reversed.

### B

CADI and Little next contend that even if section 20999.1 is preempted by the PMPA, the trial court was authorized to enjoin ARCO's constructive termination under the authority of the PMPA. While we are cognizant that state courts have concurrent jurisdiction to enforce the PMPA (*Ted's Tire Service Inc.* v. *Chevron U. S. A. Inc., supra,* 470 F.Supp. at p. 165), we note that CADI and Little expressly disclaimed reliance on the PMPA in the proceedings in United States District Court. Having done so they may not rely on the PMPA in this appeal as authority for the preliminary injunction.

After the trial court issued the preliminary injunction, ARCO removed this matter to the United States District Court for the Central District of California. CADI and Little then moved to remand the action to the state court. That motion was granted.[9] In their reply to ARCO's opposition to their motion to remand, CADI and Little made the following statements:

"[A]rco acknowledges that plaintiff's [*sic*] claim is based solely upon California law including, but not limited to, California Business and Professions Code § 20999.1."

"With the defense of preemption rejected, plaintiffs are, as they have always been, preceding [*sic*] under exclusively state law statutes."

"California Business and Professions Code § 20999.1, as well as the other authorities and legal positions argued in support of the preliminary injunction, present a prima facie basis for relief entirely under state law."

"Because preemption is a defense which can and should be pled in the state court, a defense which has been rejected and is currently being appealed by Arco in the state court, it does not transform that plaintiffs' exclusively state law lawsuit into one arising under federal law."

---

[9]We reject as meritless CADI's and Little's contention that the district court's remand order constituted a determination that state law could be construed "the same as" the PMPA. As pointed out by CADI and Little in their "Memorandum of Points and Authorities in Reply to Opposition to Motion to Remand," the United States District Court did not sit as an appellate court tribunal reviewing the state trial court's determination in this case.

"[P]laintiffs have not changed their complaint or otherwise characterized their claims as arising under PMPA."

We need not, and do not, decide if injunctive relief would have been available under the PMPA. We point out, however, that ARCO argues inconsistently. It now contends that the PMPA precludes an injunction against changed marketing practices. It maintains that the terms "termination" and "nonrenewal" under the PMPA mean *actual* termination of a franchise or failure to renew franchises after the expiration date.

ARCO may not successfully argue that the PMPA preempts section 20999.1 and then turn around and claim that the PMPA does not seek to regulate constructive terminations of franchise, for if the PMPA has no applicability to this case then no issue of preemption is presented and constructive terminations may properly be enjoined under section 20999.1. **(8)** We do not, however, agree that the PMPA applies only to an actual technical termination. A franchisor who cannot actually terminate under the PMPA may not be allowed to evade the reach of the PMPA by doing indirectly that which it cannot do directly. We conclude that the PMPA applies equally to preclude unlawful constructive terminations of franchises.

## C

CADI and Little contend that even if section 20999.1 is preempted by the PMPA, ARCO's material modification of its branded distributor franchise agreements can be enjoined as unlawful business practices because they violate the FIL (Corp. Code, § 31000 et seq.) and as unfair business practices. (§ 17200.)

They maintain that "Arco's violation of the FIL, if not enjoined, will force its franchisees to cease operating as Arco branded distributors." They further maintain that the modifications implemented by Arco were unfair business practices that "would effectively convert Arco branded distributors into Arco branded retail dealers and would force them to cease operating at Arco branded distributors."

CADI and Little cannot circumvent the PMPA's preemptive effect over section 20999.1 by challenging ARCO's constructive terminations of their franchises as violations of the FIL and section 17200.

We, therefore need not, and do not, decide whether the changes which ARCO implemented constitute material modifications of its branded distributor franchise agreements or whether said modifications were authorized by

said franchise agreements. Neither need we decide if these modifications were, in fact, unlawful business practices which violate the FIL, nor if they are unfair business practices which violate section 17200. To the extent that CADI and Little contend that these unlawful and unfair business practices were designed to constructively terminate ARCO's branded distributor agreements, they may be enjoined neither under the FIL nor under section 17200.

■ The PMPA preempts "*any provision of any law* or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) . . . of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision" of the PMPA. (15 U.S.C., § 2806 (a), italics added.)

Accordingly, the FIL and section 17200 are preempted to the extent relied upon to enjoin the constructive terminations of the franchises of Little and the members of CADI. (*Exxon Corp.* v. *Miro* (C.D.Cal. 1983) 555 F.Supp. 234, 237 [PMPA preempts application of FIL to bar nonrenewal of franchise].)

## D & E

Our determination of the foregoing issues is dispositive of the appeal in 2d Civil No. 66562. We, therefore need not, and do not, reach the further contentions of the parties in 2d Civil No. 66562.

## II

## Case No. B002911

In light of the dispositive nature of our decision in 2d Civil No. 66562, ARCO's appeal from the trial court's order denying its motion to dissolve the preliminary injunction must be dismissed as moot. Hence, we do not decide whether the trial court had jurisdiction to consider the merits of ARCO's motion to dissolve the preliminary injunction.

In 2d Civil No. 66562, the preliminary injunction issued on October 1, 1982, is reversed. The matter is remanded to the trial court to allow respondents California ARCO Distributors, Inc. and Little Oil Company, Inc. to file an amended complaint and an amended application for a temporary restraining order and order to show cause re preliminary injunction alleging such violations of the Petroleum Marketing Practices Act as they are able to demonstrate.

In 2d Civil No. B002911, the appeal taken from the April 19, 1983, order denying Atlantic Richfield Company's motion to dissolve the preliminary injunction issued on October 1, 1982, is dismissed as moot.

Each party is to bear its own costs on both appeals.

Kingsley, Acting P. J., and Arguelles, J., concurred.

A petition for a rehearing was denied August 3, 1984, and respondents' petition for a hearing by the Supreme Court was denied November 14, 1984. Broussard, J., Reynoso, J., and Grodin, J., were of the opinion that the petition should be granted.