United States Court of Appeals,

Fifth Circuit.

No. 95-11096.

APRIL MARKETING & DISTRIBUTING CORPORATION, INC., Plaintiff-Appellee,

v.

DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, Defendant-Appellant.

Jan. 10, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before REAVLEY, GARWOOD and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal arises out of a franchise between Diamond Shamrock Refining and Marketing Company ("Diamond Shamrock") and April Marketing and Distributing Corporation ("April Marketing"). April Marketing brought suit against Diamond Shamrock in federal district court, alleging constructive termination of the franchise in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 *et seq.,* and, alternatively, unjust enrichment and violation of the duty of good faith and fair dealing under Texas state law. Diamond Shamrock moved for partial summary judgment on April Marketing's PMPA wrongful termination claim. The district court denied the motion and certified its order for interlocutory appeal to this court under 28 U.S.C. § 1292(b). We granted Diamond Shamrock's petition for leave to appeal.

Because April Marketing has failed to allege any facts that would support a termination claim under the PMPA, we reverse the order of the district court.

I.

April Marketing is a wholesale and retail distributor of motor fuel and related products in the Dallas area. Diamond Shamrock refines and markets petroleum products. A series of "jobber contracts" governed April Marketing's and Diamond Shamrock's franchise relationship. Under the franchise agreement in effect when the termination allegedly occurred, Diamond Shamrock gave April

1

Marketing the right to use Diamond Shamrock's trademarks, trade names, and brands, but only at locations specifically approved by Diamond Shamrock in writing. Diamond Shamrock also agreed to sell motor fuel and other products to April Marketing. April Marketing in turn agreed to pay Diamond Shamrock's "established price" for these items in cash, unless the parties agreed upon another arrangement. Although Diamond Shamrock as a matter of practice extended credit to April Marketing, the agreement gave Diamond Shamrock the right to alter or suspend April Marketing's credit at any time. In April of 1991, Diamond Shamrock exercised its right to terminate April Marketing's credit line.

April Marketing's wrongful termination claim is premised on three basic assertions. First, Diamond Shamrock entered into direct competition with April Marketing by opening its own retail stores near April Marketing's stores and selling gasoline and other products to its own stores at or below wholesale price. Second, Diamond Shamrock imposed onerous conditions before it would allow April Marketing to use the Diamond Shamrock logo at new April Marketing locations and in some cases refused to grant permission altogether. Third, Diamond Shamrock terminated April Marketing's credit line, forcing April Marketing to pay cash for gasoline and other goods. April Marketing alleges that these actions constructively terminated April Marketing's franchise in violation of the PMPA.

## II.

The centerpiece of the PMPA, 15 U.S.C. § 2802(a), prohibits a franchisor from terminating a franchise or failing to renew a franchise relationship, except in the manner and for the reasons specified by the PMPA.[1] The Act does not define "termination," other than to specify that it "includes cancellation." *Id.* § 2801(17).

This circuit has not recognized a cause of action for "constructive termination" under the

---

[1] Congress provided a variety of remedies for the termination of a franchise in violation of the PMPA, including monetary damages and injunctive relief. *See* 15 U.S.C. § 2805(b), (d), (e).

2

PMPA.[2]  We need not address the question of whether a constructive termination is actionable under the PMPA;  in this case, Diamond Shamrock's actions did not breach any obligation it owed April Marketing and thus cannot provide the basis for a termination claim under the PMPA.

Those courts that have recognized constructive termination under the PMPA have indicated that there is no constructive termination absent a breach of the franchise.[3]  *See May-Som Gulf, Inc. v. Chevron U.S.A., Inc.,* 869 F.2d 917, 922 (6th Cir.1989);  *Barnes v. Gulf Oil Corp.,* 795 F.2d 358, 362-64 (4th Cir.1986);[4]  *see also Fresher v. Shell Oil Co.,* 846 F.2d 45, 46-47 (9th Cir.1988) (holding that the dismissal of a PMPA wrongful termination action was proper where the franchisee

---

[2]In *McGinnis v. Star Enter.,* No. 93-1234, 8 F.3d 20 (December 21, 1993) (unpublished), a franchisee brought suit against a franchisor alleging that the franchisor had constructively terminated a franchise in violation of the PMPA along with causes of action for breach of contract, violation of the Texas Deceptive Practices Act, and antitrust violations.  The majority of the court's opinion focused on the effect of a release between the parties, which had resolved a previous dispute.  The court concluded broadly that "[e]ach of plaintiffs' claims is either barred by the release clause or lacks adequate evidence to survive summary judgment."  *Id.* at 10.  Despite this general conclusion, which would appear to have resolved all the plaintiff's claims, the court nevertheless addressed the plaintiff's PMPA wrongful termination claim specifically.  The court discussed the lack of summary judgment proof of termination, including the fact that the franchise had continued in effect "at all times relevant to this action."  *Id.* at 9.  Interestingly, the court went further to state that "[t]he plain meaning of the [PMPA] does not provide for "constructive termination.' "  *Id.*  We need not address whether this language from *McGinnis* is dictum or whether, as April Marketing urges, it is a binding alternative holding;  as discussed below, the facts alleged by April Marketing do not state a claim for constructive termination even if such a cause of action exists.

[3]Within the meaning of the PMPA, a "franchise" consists of three core components:  a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the premises at which the motor fuel is sold.  *Barnes v. Gulf Oil Corp.,* 795 F.2d 358, 360 (4th Cir.1986) (citing S.Rep. No. 731, 95th Cong., 2d Sess. 17, 29 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873) (additional citations omitted).

[4]Most cases in which courts from other jurisdictions have recognized the possibility of a constructive PMPA termination involve the assignment of a franchise by the franchisor to a third party.  *See, e.g., May-Som,* 869 F.2d at 918-19;  *Barnes,* 795 F.2d at 359.  Section 2806(b) of the PMPA provides that the Act does not prevent a franchisor from assigning a franchise "as authorized by the provisions of such franchise or by any applicable provision of State law."  15 U.S.C. § 2806(b).  The Fourth and Sixth Circuits have interpreted this provision to mean that an assignment in violation of state law will give rise to a cause of action under the PMPA.  *May-Som,* 869 F.2d at 922;  *Barnes,* 795 F.2d at 363.  Those courts have also held that even if an assignment is permissible under state law, it may be actionable under the PMPA if it breaches "one of the three statutory components of a franchise...."  *May-Som,* 869 F.2d at 922;  *Barnes,* 795 F.2d at 363.

failed to allege "breach of any agreements which constitute components of their franchises"). *Cf. Smith v. Atlantic Richfield Co.,* 533 F.Supp. 264, 268-69 (E.D.Pa.) (recognizing that termination of a core secondary arrangement can constitute a termination of a franchise in violation of the PMPA), *aff'd mem.,* 692 F.2d 749 (3d Cir.1982).

April Marketing does not dispute that none of Diamond Shamrock's actions in this case violated the parties' agreement, nor does it claim that the contractual provisions that authorized Diamond Shamrock's actions themselves violate the PMPA. Diamond Shamrock's actions were clearly within its rights under the franchise. The agreement explicitly authorized Diamond Shamrock both to refuse to brand additional April Marketing stores and to refuse to extend credit to April Marketing. Further, neither the PMPA nor the contract prohibits Diamond Shamrock from competing directly with April Marketing.

Still undaunted, April Marketing argues that a franchisor's actions, even if compliant with the terms of the franchise, can be considered a PMPA termination because franchises are contracts of adhesion. The short answer is that Congress could have chosen to prescribe the terms of franchise agreements as a means of addressing the disparity of bargaining power between the parties, for example, by requiring or regulating the extension of credit to franchisees. But it did not. The legislative history of the PMPA indicates that Congress was well aware of the inequality in the bargaining positions of franchisors and franchisees. *See* S.REP. NO. 731 at 17-19, 1978 U.S.C.C.A.N. at 873, 875-878. Congress chose to address this problem not by regulating the details of the franchise agreement but rather by limiting the franchisor's ability to employ the "extreme remedy" of termination. *See* S.REP. NO. 731 at 18, 1978 U.S.C.C.A.N. at 876. Thus, we conclude that a franchisor's actions, if those actions do not breach the franchise, cannot be considered a "termination" within the meaning of the PMPA.

## III.

We need not address whether a franchisee can ever state a cause of action for wrongful termination under the PMPA absent a formal termination or cancellation of the franchise by the

franchisor.  We hold only that the PMPA's termination provision is not implicated if the franchisor has acted within its rights under the franchise.[5]

Accordingly, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[5]Because we conclude that the facts alleged by April Marketing do not support a cause of action under the PMPA as a matter of law, we do not reach the PMPA statute of limitations issue.