ENTER.

**ESSO STANDARD OIL COMPANY, (PUERTO RICO), et al., Plaintiffs,**

v.

**DEPARTMENT OF CONSUMER AFFAIRS, and Hector Ricardo Ramos Diaz, Defendants.**

**The SHELL COMPANY (P.R.) LIMITED, Plaintiff,**

v.

**Hector Ricardo Ramos DIAZ, et al., Defendants.**

**COMPAÑIA PETROLERA CHEVRON, INC., Plaintiff,**

v.

**Hector Ricardo Ramos DIAZ, et al., Defendants.**

**MOBIL OIL CARIBE, INC., et al., Plaintiffs,**

v.

**DEPARTMENT OF CONSUMER AFFAIRS, et al., Defendants.**

Civ. Nos. 81–1747 HL, 81–1771 HL, 81–1790 HL and 81–1792 HL.

United States District Court, D. Puerto Rico.

Sept. 24, 1985.

Otto Miguel Bustelo Garriga, San Juan, Puerto Rico, for plaintiffs.

Jorge Bermudez Torregrosa, San Juan, Puerto Rico, for Compañia Petrolera Chevron, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, five oil companies engaged in the distribution and marketing of gasoline, diesel and other petroleum products in the Commonwealth of Puerto Rico, brought this action for declaratory judgment, pursuant to 28 U.S.C. Sections 2201, 2202, asking this Court to invalidate Commonwealth Regulation No. 2758 ("the Regulation") which controls the rents to be paid by gasoline filling stations. The Regulation was promulgated and will be enforced by defendants, the Department of Consumer Affairs ("DOCA"), an administrative agency of Puerto Rico, and Héctor Ricardo Ramos Díaz, former Secretary of DOCA.[1] Plaintiff's sole claim is that the Regulation is preempted by the Supremacy Clause of the Constitution, Art. VI, Cl. 2, as it conflicts with the federal Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. 2801 et seq.

Before the Court are cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper when there exists no genuine dispute as to a material fact and the prevailing party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1 (1st Cir.1984). The parties, here, acknowledge that they are in agreement on all material factual matters. The only issue remaining before the Court is whether the Commonwealth Regulation is preempted by the Supremacy Clause of the Constitution. Upon careful review of the material issues presented by the parties, the Court finds the defendants entitled to summary judgment.

## FACTUAL BACKGROUND.

Congress enacted the Petroleum Marketing Products Act (PMPA), 15 U.S.C. Section 2801 et seq. in June, 1978. The express purpose of the statute is to set minimum federal standards governing the termination and nonrenewal of franchise relationships between the suppliers of fuel ("franchisors") and the retailers ("franchisees"). S.Rep. No. 731, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 873. The Legislature of the Commonwealth of Puerto Rico enacted Act No. 156, 23 L.P.R.A. 1133(e) (as an amendment to Act No. 73, 23 L.P.R.A. 1133 et seq.) on July 20, 1979.[2] This Act delegated authority to DOCA to regulate the rents that lessors of gasoline stations could charge their lessees. On August 23, 1979, DOCA declared a "freeze" on rents of gasoline stations in order to prepare the rent control regulation. Regulation No. 2758, "Regulation to Determine the Rents to be Paid by Gasoline Filling Stations", the Regulation at issue in this case, was adopted by DOCA on March 25, 1981. On October 8, 1981 the Regulation, as amended, went into effect.

---

**1.** Defendant Héctor Ricardo Ramos has been succeeded in office by Carlos López. A successor in office is automatically substituted under Fed.R.Civ.P. 25(d). *Maria Santiago v. CRUV*, 554 F.2d 1210 (1st Cir.1977).

**2.** This Act comes out of a history of rent control legislation in Puerto Rico beginning with Act No. 464, April 25, 1946, 17 L.P.R.A. 181 et seq.

Plaintiffs are "franchisors" within the meaning of the PMPA, 15 U.S.C. Section 2801(3), and "lessors" under Section 2 of the Regulation. Plaintiffs each have numerous franchise agreements, including leases for gasoline filling stations at locations throughout the Commonwealth. These agreements have expired or are due to expire within the next twelve months. The renegotiation of the terms of the franchise will be affected by DOCA's Regulation controlling rents.

## I. PMPA: AN OVERVIEW.

Congress enacted the PMPA with the intent of protecting petroleum retailers, "franchisees", from arbitrary or discriminatory termination or nonrenewal by franchisors, and to establish uniform guidelines regarding termination and nonrenewal of franchise relationships. S.Rep. No. 731, 95th Cong., 2d Sess., reprinted in 1978 U.S. Code Cong. & Ad.News 873, 875, 877. The legislative history of the statute indicates that Congress understood that the franchise relationship in the petroleum industry was unique because the franchisor not only grants a trademark license to the franchisee, but also leases to the franchisee the gasoline station and is the primary, even exclusive, supplier of motor oil, the franchisee's principal sale item. Congress recognized that this relationship resulted in a gross disparity in bargaining power which lead to contracts of adhesion and to situations where franchisors abused their position and would terminate a franchise for arbitrary or discriminatory reasons or would threaten termination or nonrenewal in order to compel the franchisee to comply with the franchisor's market policies. *Id.*, at 875–877. The PMPA is an effort to remedy these concerns with the franchise relationship. See *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982). See also Ha-

berthur, *Petroleum Marketing Act: Equalizing the Bargaining Power in the Franchise Relationship*, 25 South Dakota Law Review 69 (1980).

Congress was also aware that numerous states had enacted legislation addressing the petroleum franchise problems which had resulted in an uneven patchwork of rules. 1978 U.S.Code Cong. & Ad.News at 877. The PMPA was designed to establish a uniform regulation governing the grounds for termination or nonrenewal of a franchise. Id.

Title I of the PMPA prohibits termination or nonrenewal of any franchise relationship except on the basis of specifically enumerated grounds and upon compliance with certain notification requirements.[3] 15 U.S.C. 2802(a),(b)(1).

Section 2802(b)(2) sets forth grounds for termination and nonrenewal: (A) failure to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship; (B) failure to exert good faith efforts to carry out the provisions of the franchise; (C) the occurrence of an event which is relevant to the franchise relationship and makes termination or nonrenewal reasonable; (D) a written agreement to end the franchise relationship; and (E) a good faith decision to withdraw from the relevant geographic market.[4] Section 2802(b)(3) enumerates additional grounds which provide a basis for nonrenewal only: (A) failure to agree to good faith changes to the franchise provisions; (B) receipt of numerous bona fide customer complaints; (C) continued failure to operate the premises in a clean and safe manner; and (D) if the franchise term was at least three years long, a good faith decision to convert the premises to another use or

---

**3.** The notice requirements of the PMPA are embodied in section 2804. Generally, notice of termination or nonrenewal must be "furnished" not less than 90 days before the effective date. Id. Section 2804(a)(2).

**4.** Invocation of these grounds is further conditioned on various time limitations which are

designed to prevent franchisors from basing termination or nonrenewal upon "old and long forgotten events," yet which give the franchisor adequate time to evaluate the events or to work with the franchisee to correct the situation. See Senate Report at 33–34, U.S.Code Cong. & Ad. News at 892.

that renewal would be uneconomical despite any reasonable changes to the provisions of the franchise.

## II.  PREEMPTION.

Plaintiffs claim that the challenged Regulation of the Commonwealth of Puerto Rico is preempted by the PMPA under the Supremacy Clause of the U.S. Constitution. When Congress states expressly in its enactment which areas of state authority are to be preempted, a state law will fall if:  1) a direct conflict exists between the state and federal regulation, such that it is impossible to comply with both laws, *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963);  or 2) the state regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941);  or 3) when Congress "has occupied the field" in a given area so as to displace all state regulations whether compatible or hostile. *Campbell v. Hussey*, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961).

Section 2806(a) of the PMPA states specifically which area of state authority to regulate petroleum franchises is preempted.

"To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the non-renewal (or the furnishing of notification with respect thereto) or any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regula-

tion is the same as the applicable provision of this subchapter."

This provision clearly marks the boundary of federal power.  It also manifests Congress' intent to treat state laws governing petroleum franchises as severable and to preempt only those provisions which address termination or nonrenewal. *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163, 165 (D.Conn.1979).  Following this reasoning, courts have invalidated state laws concerning franchise termination or non-renewal but have allowed to stand provisions addressing other aspects of the franchise relationship. *Exxon v. Georgia Ass'n. of Petroleum Retailers*, 484 F.Supp. 1008 (N.D.Ga.1979), aff'd. 644 F.2d 1030 (5th Cir.1981) (Georgia statute provisions which prescribe grounds for termination and nonrenewal preempted.  Provision limiting hours of operation by service station not preempted); *DiNapoli v. Exxon Corp.*, 549 F.Supp. 449 (D.N.J.1982) (Provision of New Jersey statute concerning franchise termination preempted); *Lasko v. Consumers Petroleum of Conn., Inc.*, 547 F.Supp. 211 (D.Conn.1981) (Connecticut statute setting a three-year minimum franchise lease period not preempted). See also *Ted's Tire Service, Inc.*, supra; *Ricco v. Shell Oil Co.*, 180 N.J.Super 399, 434 A.2d 1151 (Ch.Div.1981).

It is the task of this Court to analyze the Puerto Rico regulation to determine whether it concerns the termination or nonrenewal of the petroleum franchise relationship and, if so, whether the regulation conflicts with the PMPA or serves as an obstacle to the PMPA's purpose and objectives.

### A.  *The Regulation: an overview.*

The Regulation was enacted by the Puerto Rico legislature for the purpose, similar to that of the PMPA, of protecting the franchisee (termed "lessee") of a gasoline station.  The Regulation sets the criteria, procedure, and formula for determining the monthly rental rate of a service station.

Section 5 of the Regulation states that the rental rate shall be established by

agreement of the parties by taking into account fixed criteria.[5]

Sections 6, 7, and 8 establish the procedure to be followed when the parties are unable to reach agreement on the rent. When impasse is reached either party may petition the assistance of DOCA within three months before or after the expiration date of the existing contract. Within two months of the petition's filing date, DOCA will set the rent by applying an established formula.[6] Section 9 states that once the rent is fixed by DOCA it is to be frozen at that rate for a period of four years and may be altered only by petitioning DOCA and proving a substantial change in one of the elements of the formula. The final section pertinent to the present claim, Section 10, states that the rental rate under no circumstances is to exceed 10% of the market value of the property to be leased. This limitation applies to the agreement between the parties as well as the rate set by DOCA.

### B. *The PMPA and the Regulation compared.*

■ On its face, the Regulation addresses only lease rental rates and does not concern the termination or nonrenewal of a franchise. Plaintiffs argue, however, that the application of the Regulation will affect termination or nonrenewal of the franchise agreements. They contend that Section 5 of the Regulation, which allows either party to petition DOCA when they fail to agree on rent, directly conflicts with provision 2802(b)(3)(A) of the PMPA. This provision permits a franchisor not to renew a franchise agreement when the franchisor and the franchisee fail to agree on changes or additions to the agreement, provided that the franchisor's insistence on these terms is not for the purpose of preventing renewal.

Plaintiff's argument that Section 5 and PMPA provision 2802(b)(3)(A) are in conflict, would have merit if section 5 of the Regulation required the parties to submit to the jurisdiction of DOCA as a sort of binding arbitration whenever their negotiations come to an impasse. However, nowhere on the face of the Regulation is there an indication that it will be mandatory for the parties to appear before DOCA once a petition is filed. In fact, when asked the question on oral argument whether a franchisor was free to terminate (or not renew) a franchise relationship when the parties could not reach an agreement on rent, the attorney for DOCA replied:

---

**5.** Section 5.

The rental rate of a gasoline filling station shall be established by agreement between the lessor and lessee taking into account the following criteria and limitations established in these Regulations:
1. The amount of investment made by lessor in land and/or building.
2. The market value of property to be leased.
3. The amount of property taxes.
4. Equipment maintenance cost incurred by the lessor.
5. The former rental rates.
6. The average volume of gallons of gasoline sold by the station during the twelve (12) months prior to the proposed effective date of the new rental rate; and
7. The net income derived by the lessee from the operation of the station.

**6.** This Department shall use the following formula for the determination of the rental rate:

$$CF = F\ (CE)$$
$$CE = CO + .06\ (VMP)$$
$$CO = D + TX + M$$

The variables used in the preceding formula shall have the following meaning:
$CF$ —Rent determined by the Department
$F$ —Adjustment Factor
$CE$ —Estimated Rent
$CO$ —Cost of Occupancy
$D$ —Property Depreciation
$TX$ —Property Taxes
$M$ —Maintenance Cost
$VMP$—Market Value of Property

The rental rate determined and fixed (CF) by this Department shall be equal to the estimated cost (CE) multiplied by the adjustment factor (F) which shall be based on the criteria established in Article 5 of these Regulations and may fluctuate between fifteen (15) percent and minus fifteen (–15) percent of the estimated rent (CE), in accordance with the aforementioned criteria.

The estimated rent (CE) shall be the sum of the cost occupancy (CO) plus six (6) percent of the market value of the property (VMP).

The cost of occupancy (CO) shall be the sum of the property depreciation (D), the real property taxes (TX) and the maintenance cost (M).

"Regulation 2715 (sic, 2758) does not force anyone to continue a franchise relationship. We'd be the first to agree that if it did it could be preempted ... If there is no agreement on the rent, the company is free to say that they can't accept any less than twelve per cent and terminate under the PMPA." Transcript, p. 34.

Plaintiffs further assert that Section 9 of the Regulation, which freezes rents for a period of four years at the rate set by DOCA, conflicts with various provisions of the PMPA by preventing a franchisor from terminating or not renewing an agreement during that period. The Court disagrees. As Section 9 is worded it merely regulates one of the terms of the franchise relationship if the parties enter into an agreement. Courts have consistently upheld state legislation regulating terms of a petroleum franchise relationship other than the terms of termination and nonrenewal. *Georgia Ass'n. of Petroleum Retailers, supra* (held state regulation limiting hours of service station operation not preempted by the PMPA); *Lasko, supra* (held state regulation setting a minimum three year lease term for gasoline service stations not preempted). In reference to Connecticut's law regulating a minimum lease term, the court in *Lasko* stated:

"The Connecticut statute does not prohibit a franchisor from ever terminating or nonrenewing a franchise, it simply requires that a franchise will be automatically renewed at the conclusion of a term for a new three-year term if not properly terminated or nonrenewed. And, of course, what constitutes proper nonrenewal or termination is now determined by PMPA."

*Id.* at 213.

Similarly, in the present action, Section 9 of the Regulation does not prohibit the franchisor from terminating or nonrenewing a franchise arrangement. Under PMPA Section 2802(b)(2)(C), the franchisor could properly terminate a lease upon the occurrence of an event which is relevant to the franchise or, under Section 2802(b)(2)(E), termination would be proper after making a good faith decision to withdraw from marketing motor fuel in that area. The franchisor may also decide not to renew the agreement under Section 2802(b)(3)(D)(i)(IV) based on a determination in good faith that the venture is uneconomical. These provisions provide the franchisor with a valid defense if DOCA tries to intervene in the termination or nonrenewal relationship. See *Ricco v. Shell Oil Co., supra.*

This Court acknowledges that the regulation of the rental rate of the franchise agreement is more burdensome on the franchisor than other state legislation which has been upheld—the regulation of the hours of filling station service and the regulation of the lease term. See *Georgia Ass'n. of Petroleum Retailers, supra; Lasko, supra.* Nonetheless, the regulation of rental rates is the regulation of a term other than termination or nonrenewal and under the narrow preemption provision of the PMPA Puerto Rico has authority to regulate in this area.[7]

Finally, plaintiffs contend that the Regulation as a whole, and, in particular, Section 10, which places a ceiling on rental rates, obstructs the purpose and objective of the PMPA. They argue that Congress' intent in enacting the PMPA was not only to protect the franchisee but also to assure the franchisor sufficient flexibility to freely negotiate an agreement. Plaintiffs rely on *Munno v. Amoco Oil,* 488 F.Supp. 1114 (D.Conn.1980) to support their argument that Congress intended the market place to control the service station lease agreement. See also, *Palmieri v. Mobil Oil Corp.,* 682 F.2d 295 (2nd Cir.1982).

*Munno, supra,* held that the Court was empowered to interfere with the actions of a franchisor only when the franchisor intended to discriminate against the fran-

---

**7.** The Court reiterates that the Puerto Rico Regulation is being challenged solely on the grounds of preemption. No other constitutional or statutory claims to invalidate the Regulation have been presented to the Court.

chisee, otherwise, "the dictates of the market place alone will govern the transaction …" Id. at 1119. Plaintiffs' reliance on this case to support the argument that Congress intended the PMPA to assure that the market place would control lease rates is misplaced. *Munno* is a decision interpreting the statutes' "good faith" standard and the role of the judiciary. It is not a decision analyzing the purpose or objective of the PMPA.

It is true that in enacting the PMPA, Congress was concerned not to unduly burden the franchisor and was careful to strike a balance between the competing interests of the parties. 1978 U.S.Code Cong. & Ad.News at 890, 893–894. However, the sole and express purpose and objective of the statute was to establish a uniform regulation protecting the franchisee from arbitrary termination. The challenged Regulation in no way obstructs this purpose.[8]

For the above reasons, the Court grants summary judgment in favor of the defendants. The Clerk shall enter judgment dismissing the complaint.

IT IS SO ORDERED.

**8.** The Court is aware that the Regulation, in particular Section 10, tilts the balance in favor of the franchisee. However, under the test for preemption, neither this section, nor any other, conflicts with the PMPA or obstructs its purpose. Again the Court states that the Regulation is being challenged on the grounds of preemption only. On this issue it is noted that Congress' concern with allowing the franchisor flexibility came in part to assure that "there should be no basis for a claim of unconstitutional taking of property without compensation." 1978 U.S.Code Cong. & Ad.News, at 890.