180 N.J. Super. 399 (1981)
434 A.2d 1151
VINCENT N. RICCO, TRADING AS VINNIE'S ALLWOOD SHELL, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
SHELL OIL COMPANY, A DELAWARE CORPORATION DOING BUSINESS IN NEW JERSEY, RICHARD L. SISCO AND WILMA M. GEYH, AS TRUSTEES UNDER A TRUST, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Passaic County.
Decided May 8, 1981.
*401 Michael F. Reilly, for plaintiff.
Frank D. Angelastro, for defendant Shell Oil Company (Mattson, Madden & Polito, attorneys).
Lois M. Van Deusen, for defendants-counterclaimants Richard L. Sisco and Wilma M. Geyh (McCarter & English, attorneys).
LESTER, J.S.C.
This matter came before the court in connection with defendant Shell Oil Company's motion for summary judgment. The motion will be granted.
*402 This case involves a suit by plaintiff Vincent N. Ricco, trading as Vinnie's Allwood Shell, Inc., for damages upon failure of defendant Shell Oil Company (Shell) to renew Ricco's service station lease and for alleged tortious interference with Ricco's contractual agreement with Samuel Maniero to sell Ricco's station to Maniero.
Shell counterclaims for injunctive relief, damages and attorney's fees, alleging that plaintiff was not entitled to possession of premises beyond July 31, 1979; that Shell had the right to elect not to renew the service station lease and dealer agreement between it and plaintiff, and that Shell could not be compelled to extend the underlying base lease beyond July 31, 1979.
By lease agreement dated May 29, 1969 Richard Sisco and Wilma M. Geyh leased premises at 922 Bloomfield Avenue, at Market Street, Clifton, New Jersey, to Forbes Corporation "as and for an auto service station" for a term of ten years, beginning August 1, 1969, and terminating July 31, 1979, at $36,000.00 a year. Paragraph 8 granted to the lessee the right to assign or sublet the premises. On April 23, 1971 Forbes assigned to Shell all of its rights, title and interest under the lease agreement. On April 20, 1971, Forbes assigned to Shell a dealer agreement between Forbes and John Derkacs, at that time the dealer at the premises. The base lease was duly recorded, as was the assignment of lease.
Vincent N. Ricco purchased the business from Derkacs on January 14, 1974 for $15,000 plus $9,281.83 for equipment and inventory. Ricco thereafter entered into four consecutive service station leases, beginning on December 19, 1973, the last one dated August 18, 1978. On September 18, 1978 Shell informed Ricco by letter that the base lease would expire on July 31, 1979 and might not be extended. The letter also stated that if Shell should renew or extend the underlying lease, it would expect to *403 renew its service station lease and dealer agreement with plaintiff "if and as required by applicable law," provided no other grounds existed for nonrenewal. On May 3, 1979 Shell sent written notice to plaintiff that the underlying lease would, in fact, expire on July 31, 1979, and therefore the service station lease and agreement dated August 18, 1978 would expire by their terms on July 30, 1979 and would not be renewed. Plaintiff was requested to vacate the premises on or before July 31, 1979. Plaintiff refused to vacate, instituted suit on July 24, 1979 seeking injunctive relief against Shell and remained on the premises until January 1980, at which time he vacated as a result of eviction proceedings instituted by the owners of the fee.
Plaintiff seeks damages under the first and second counts of his complaint, arguing that the New Jersey Franchise Practices Act applies to the facts of this case and is, therefore, the applicable law; also, that defendant did not have "good cause" to make the election not to renew the franchise.
The Petroleum Marketing Practices Act, 15 U.S.C.A. § 2801 et seq., enacted June 19, 1978, clearly and expressly preempts state franchise laws in the area of termination of franchises entered into or renewed on or after the date of enactment of the act; i.e., any franchises without regard to the date on which the relevant franchise was entered into or renewed (15 U.S.C.A. § 2802) unless the state franchise law is the same as the federal law. The provisions of the two acts differ with regard to termination or nonrenewal of franchise relationships or the notification to be given with respect to same.
N.J.S.A. 56:10-5 reads in pertinent part:
... It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, canceling or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise.
Section 102 of the Petroleum Marketing Practices Act sets forth as one of its grounds for termination or nonrenewal the following:

*404 ... The loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease under certain circumstances.
The New Jersey act is silent as to this ground.
In addition thereto, the federal act requires 90 days' notice, whereas the New Jersey act requires 60 days. The differing provisions result in preemption of the state act by the federal act. Also, the service station lease and dealer agreement which is the subject matter of this litigation was dated August 18, 1978, for a period extending from January 1, 1979 to June 30, 1979, subsequent to enactment of the federal act. Legislative history of the act shows that it was passed "to remedy the disparity of bargaining power which disadvantages the franchisee in its negotiations for a franchise agreement," its purpose being "to protect the franchisees from arbitrary or discriminatory termination or non-renewal."
Loss of the right to grant possession through expiration of an underlying lease is an event deemed to be reasonable and not "arbitrary or discriminatory." The facts of this case indicate this was the ground relied upon by Shell when it elected not to renew its franchise with plaintiff. Therefore, plaintiff's claim is cognizable only under the federal act which here must control.
Plaintiff, in the alternative, claims relief and seeks damages under the federal act, claiming that Shell's election not to renew was unlawful and violated the Petroleum Marketing Practices Act, in that Shell was under an affirmative duty to renew under the option. Shell, on the other hand, posits that it had the right not to renew the franchise relationship with Ricco where Shell's base lease with the owners of the station premises expired by its own terms on July 31, 1979, and that Shell's election not to renew is governed by its express terms and provisions.
Shell has provided ample evidence of its compliance with the notification provisions of the federal act. In addition, Shell *405 gave notice to plaintiff prior to execution of the final lease agreement that it did not own the land on which the service station was located and that its lease with the third party would expire on July 31, 1979. Thereafter, by letter dated May 3, 1979, hand-delivered to plaintiff, as well as being posted certified mail, Shell once again set forth the date for expiration of the underlying lease; that such lease would not be renewed, and that plaintiff would be required to vacate on or before July 31, 1979.
It is true that Shell did have an option to renew the underlying lease for an additional period of five years which Shell chose not to exercise. Shell posits that it was under no obligation to exercise such option or to extend the underlying lease, and this election was in no way violative of the federal act. The court agrees. The Petroleum Marketing Practices Act expressly makes loss of a franchisor's right to grant possession of the leased premises a "reasonable" ground for nonrenewal (see 15 U.S.C.A. § 2802(b)(2)(C) and (c)(4)) and imposes no requirement that the franchise be uneconomical or that the underlying lease be renegotiated.
Next, plaintiff takes the position that the public policy of the State of New Jersey restricts Shell's right to terminate, cancel, or fail to renew a dealer agreement to a "good cause" situation, relying on Shell Oil v. Marinello, 63 N.J. 402 (1973). The court cannot sustain this position in light of the aforementioned preemption of the federal act and the applicability of that law in this area.
We are not here involved with the disparity of bargaining power and the elements which convinced the court in Marinello to protect one from the "unjust" cancellation of a franchise. Here, we deal with contractual interpretation and a clear dictate of federal law which sets a standard. This decision must be limited solely to those franchises in the petroleum marketing field preempted and governed by 15 U.S.C.A. § 2801 et seq. The "franchise" here in question is such a franchise.
*406 The issue before the court is limited. The court has not ruled and need not rule on whether Shell could cancel (or not renew) a franchise under other circumstances. It is held that where the underlying lease ends by its own terms, the franchisor need not attempt to negotiate a new lease so that the franchise may continue to operate at the location in question. The Petroleum Marketing Practices Act, 15 U.S.C.A. § 2801 et seq., has, in fact, preempted the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 et seq., under the facts here present in the area of terminations and nonrenewals of motor fuel franchises and the notification requirements in regard thereto. To that end, the federal act preempts any public policy thrust as might be inferred from the Marinello decision, supra.
Finally, plaintiff alleges in paragraph three of the second count of the complaint malicious interference with contractual rights in the proposed sale of the business to Maniero by Ricco. Shell argues that it had an affirmative duty to be truthful with Maniero when he applied for the dealership or be subject to suit for fraud. Plaintiff's rights are reserved to pursue this cause of action in the Law Division for damages. This court does not address itself to that issue.