528 A.2d 155

**Isaac JOHNSON, Appellant,**

v.

**MOBIL OIL CORPORATION and D.G. Hotsenpiller.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1986.

Filed May 8, 1987.

Reargument Denied July 21, 1987.

276

John L. Lachall, West Chester, for appellant.

Michael K. Tillery, Philadelphia, for appellees.

Before CIRILLO, President Judge, and ROWLEY, and BECK, JJ.

CIRILLO, President Judge:

Isaac Johnson filed a three count complaint in the Court of Common Pleas, Chester County, against Mobil Oil Corporation (Mobil) and D.G. Hotsenpiller (Hotsenpiller), an employee of Mobil. This is an appeal from an order granting summary judgment and partial summary judgment[1] against appellant on Counts I and II, and from dismissal of Count III for lack of subject matter jurisdiction based on the Federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2806.[2]

In July, 1981, appellee Mobil Oil was solicited by appellant Johnson to become an independent dealer-operator for Mobil Oil. Mobil urged him to sign a trial franchise agree-

---

**1.** Partial summary judgment was granted as to defendant Hotsenpiller. Apparently, grant of this motion was uncontested and is not before us on appeal.

**2.** The PMPA is described in the legislative reports as a "single uniform set of rules governing the grounds for termination and nonrenewal of motor fuel marketing franchises and the *notice* which franchisors must provide franchisees prior to termination of a franchise or nonrenewal of a franchise relationship." *Bellmore v. Mobil Oil Corporation,* 783 F.2d 300, 305 (2d Cir.1986) (emphasis added)(quoting S.Rep. No. 731, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 877).

ment,[3] a special type of lease created under the PMPA, which would run for a period of one year. Mr. Johnson claims that he was assured by appellee's agents that if he increased gallonage to 50,000 and otherwise performed his duties, his lease would be renewed for at least three years. One month later, he was again assured that if he performed satisfactorily his agreement would be renewed for three additional years. In response to his questions as to whether Mobil would in fact exercise its right to non-renewal, Mr. Johnson was told by Mobil representatives that "there was a one year lease with provisions for continuing the three years," and that "[i]f you do a good job, you know, you're in. We don't throw people out who are doing a good job."

Appellant also asserts that he was told by Mobil's representatives that the underlying lease gave Mobil a right of first refusal in the event the owner decided to sell, and that Mobil would exercise this right if given the opportunity.

**3.** 15 U.S.C. § 2803 covers trial franchise agreements and defines them as follows:

  **b) Definitions.** For purposes of this section—

    (1) The term "trial franchise" means any franchise—

    (A) which is entered into on or after the date of enactment of this Act [enacted June 19, 1978];

    (B) the franchisee of which has not previously been a party to a franchise with the franchisor;

    (C) the initial term of which is for a period of not more than 1 year; and

    (D) which is in writing and states clearly and conspicuously—

    (i) that the franchise is a trial franchise;

    (ii) the duration of the initial term of the franchise;

    (iii) that the franchisor may fail to renew the franchise relationship at the conclusion of the initial term stated in the franchise by notifying the franchisee, in accordance with the provisions of section 104 [15 U.S.C. § 2804], of the franchisor's intention not to renew the franchise relationship; and

    (iv) that the provisions of section 102 [15 U.S.C. § 2802], limiting the right of a franchisor to fail to renew a franchise relationship, are not applicable to such trial franchise.

    (2) The term "trial franchise" does not include any unexpired period of any term of any franchise (other than a trial franchise, as defined by paragraph (1)) which was transferred or assigned by a franchisee to the extent authorized by the provisions of the franchise or any applicable provision of State law which permits such transfer or assignment, without regard to any provision of the franchise.

However, appellant contends that he was not notified nor could he have discovered that: (1) the lease between Mobil and Mr. Pilotti contained a provision whereby either party could terminate upon one year's notice; (2) Mobil knew Mr. Pilotti was attempting to sell the property; (3) Mobil had refused Mr. Pilotti's offer of sale three months earlier; (4) Mobil had been notified of an offer by Exxon to purchase the property and (5) Mobil had already decided not to exercise their option to buy before executing the agreement with appellant.

Mr. Johnson executed what was purportedly a trial franchise agreement with Mobil on August 18, 1981 for a period of one year. At that time he was told that a third party, Mr. Pilotti, owned the property where the service station was located and that Mobil's lease with Mr. Pilotti (the underlying lease) would not expire until May 31, 1986. Appellant claims his agreement with Mobil confirmed the May 31, 1986 expiration date. Based on the representations, Mr. Johnson claims he was promised a certain future as a Mobil dealer.

On March 24, 1982, appellant was notified of the nonrenewal of his trial franchise agreement and that his lease would expire as of August 28, 1982. The reason given for the termination was the expiration of Mobil's underlying lease as of September 30, 1982. Both parties agree that appellant increased sales and performed his other duties in an exceptional way.

Count I of appellant's complaint alleged that Mobil breached the trial franchise agreement. Count II alleged that both appellees fraudulently induced appellant to enter into the agreement.

Appellant claims he was the victim of fraud and misrepresentation in that he was induced to sign an agreement which misstated the expiration date of the underlying lease as May 31, 1986, rather than September of 1982. The trial court granted summary judgment in favor of Mobil on these state law claims, finding them to be preempted by the PMPA. Count III alleged that appellees violated the PMPA

by failing to renew the franchise agreement. The trial court dismissed Count III for lack of subject matter jurisdiction, holding that Congress vested exclusive jurisdiction in the federal courts over claims brought under the PMPA. This appeal followed.

Mr. Johnson raises two issues on appeal: (1) did the trial court err when it concluded that his state law claims are preempted by federal law—namely the Petroleum Marketing Practices Act—and when it further concluded that these claims must be presented under the Petroleum Marketing Practices Act rather than under the pure state law counts of his complaint; and (2) did the trial court err when it concluded that Count III of the complaint must be dismissed for lack of subject-matter jurisdiction because the United States Congress intended that the jurisdiction of claims brought under the Petroleum Marketing Practices Act rests exclusively with the federal courts.[4]

I

Mobil filed a motion for summary judgment averring that all of Mr. Johnson's state law claims as set forth in Counts I and II were preempted by the specific provisions of the PMPA. The motion was granted. As a result, the hearing judge never reached the merits of the state law issues.

The PMPA is a complex piece of legislation which was enacted in 1978 in recognitition of the disparity of bargaining power between franchisor and franchisee in the motor fuel industry. The Act was intended by Congress to protect independent gasoline marketers who lacked the bargaining position to override distributor decisions to discontinue franchise agreements. In addition, the Act was intended to provide a uniform set of rules. *See Bellmore v. Mobil Oil Corp.*, 524 F.Supp. 850 (D.Conn.1981); *Munno v. Amoco Oil Corp.*, 488 F.Supp. 1114 (D.Conn.1980); *Marini v. Atlantic Richfield Co.*, 475 F.Supp. 142 (D.N.J.1979).

**4.** A timely appeal had originally been filed after the dismissal of Counts I and II. However, we agree with appellant in this case, who properly withdrew the initial appeal, that the appeal properly lies with the dismissal of Count III.

"Title I of the PMPA prohibits termination or nonrenewal of any franchise relationship except on the basis of specifically enumerated grounds and upon compliance with certain notification requirements." *Esso Standard Oil Co. v. Dep't of Consumer Affairs*, 793 F.2d 431, 432 (1st Cir. 1986); 15 U.S.C. §§ 2802–2804. The PMPA defines "franchise relationship" as "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise." 15 U.S.C. § 2801(2). There is no dispute that a franchise relationship was created between appellant and Mobil. However, Mr. Johnson contends that his suit does not involve termination and nonrenewal of a franchise relationship. He contends it deals only with the common law claims of fraud and misrepresentation. Specifically, he asserts that he was fraudulently induced to enter into the agreement and that Mobil breached the agreement by not telling him that Mobil's lease on the property would expire in 1982, and not in 1986 as he was told. He claims that his cause of action is based upon fraud and misrepresentation which occurred prior to the nonrenewal.

The doctrine of preemption springs from the simple mandate that the "Constitution, and the Laws of the United States ... shall be the Supreme Law of the Land...." U.S. Const. art. VI, cl.2. Chief Justice Marshall first stated the doctrine in *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824):

The nullity of any act, inconsistent with the Constitution, is produced by the declaration, that the Constitution is the supreme law. The appropriate application of that part of the clause which confers the same supremacy on laws and treaties, is to such acts of the state legislatures as do not transcend their powers, but though enacted in the execution of acknowledged state powers, interfere with, or are contrary to, the laws of Congress, in pursuance of the Constitution, or some treaty made under the authority of the United States. In every case, the act of Congress, or

the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it.

22 U.S. (9 Wheat.) at 210–11.

It is well settled that federal law can preempt state law in two ways. Congress can intend to occupy the entire field so there would be no applicable state law on the subject, *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1017 (N.D.Ga.1979), or state law may, in fact, conflict with federal law. Such conflict occurs where compliance with both federal and state regulation is a physical impossibility, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 132–43, 83 S.Ct. 1210, 1210–17, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Most of the cases interpreting the scope of the PMPA's preemptive effect deal with the termination and nonrenewal of continuing or long-term leases under § 2802 of the Act. Section 2806,[5] defining the relationship of statutory provisions to state and local law, has been interpreted by courts as mandating a broad preemption of any claim related to termination or nonrenewal of petroleum franchises. *Bellmore v. Mobil Oil Corporation*, 783 F.2d 300, 304, (2d Cir.1986); *Continental Enterprises Inc. v. American Oil Co.*, 628 F.Supp. 126 (W.D.Mo.1986) *Graeber v. Mobil Oil*

---

**5.** 15 U.S.C. § 2806 provides in part:

**§ 2806. Relationship of statutory provision to State and local laws**

(a) To the extent that any provision of this title applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title.

*Corp.*, 614 F.Supp. 268 (D.N.J.1985); *Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md.1983). Section 2806 provides that no state or local law may be adopted, enforced or continued in effect unless such law is the same as the applicable provision of the PMPA. Most of the cases examining the relationship of the Act to state law interpret § 2806 as preempting state law only where it is inconsistent with the PMPA. *See Bellmore, supra; Clark v. Mobil Oil Corp.*, 496 F.Supp. 132 (E.D.Mo.1980); *Brach v. Amoco Oil Co.*, 570 F.Supp. 1437 (N.D.Ill.1983); *DiNapoli v. Exxon Corp.*, 549 F.Supp. 449 (D.N.J.1982).

With respect to termination and nonrenewal claims, the court in *Continental Enterprises* stated:

Clearly, the Act is the exclusive remedy for these claims. It is true that the Act was designed with the protection of the franchisee in mind, but the protection is not without a price, namely, adherence to ... § 2806(a).... Plaintiff cites *Clark v. Mobil Oil Corp.*, ... for its contention that the Act simply preempts state common law remedies which would bar termination by the franchisor. This limitation of the scope of the Act is not found in the statute or its legislative history; in fact, the provision in § 2805 for actual and punitive damages as well as equitable relief appears to provide the relief sought by plaintiff.

628 F.Supp. at 129. In *Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md.1983), the court states that legislative history supports the conclusion that § 2806 applies to generalized statutes and common law doctrines. Because of the "need 'to establish uniform guidelines regarding the franchise relationship,' ... [c]onflicting applications of a common law rule ... disrupt the 'uniform guidelines' of the PMPA just as much as a specific state regulatory statute would." *Id.* at 194 (citing S.Rep.No. 731, 95th Cong., 2nd Sess. 19 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 877).[6]

**6.** The court in *Huth* also observed that,
§ 2806 expressly covers remedies as well as rights; the Maryland limitations statute provides franchisees with a remedy for wrongful

Other courts have found that the Act "neither expressly nor impliedly preempts all state law relating to any aspect of the termination or nonrenewal of petroleum franchises. Rather, these courts have held that it preempts only state statutes as to grounds for, procedures for, and notification requirements with respect to termination or nonrenewal." *Bellmore v. Mobil Oil Corp.*, 783 F.2d at 304.[7] *See Esso Standard Oil Co. v. Dep't of Consumer Affairs*, 793 F.2d at 434, (stating that although the "primary objective of the PMPA was to protect franchisees from arbitrary and discriminatory terminations ... there is no doubt that Congress was also concerned with retaining some flexibility for franchisors.").

With regard to trial franchise agreements, we know of no Pennsylvania cases dealing with this type of suit under the

termination which is not "the same as" the civil action which 15 U.S.C. § 2805(a) both creates and circumscribes. Both the legislative history and numerous District Court decisions confirm that Congress specifically intended to preempt conflicting state laws dealing with the termination of franchise relationships. S.Rep.No. 731, 95th Cong., 2nd Sess. 42, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 901; *Lyons v. Mobil Oil Corp.*, 526 F.Supp. 961, 962 (D.Conn.1981); *Gaspar v. Chevron Oil Co.*, 490 F.Supp. 971, 973 (D.N.J.1980)(stating in *dicta* that "[t]he Act is the exclusive remedy available to the franchisee")....

Plaintiffs might argue that § 2806 only preempts state statutes expressly regulating the petroleum franchisor-franchisee relationship and does not address generalized statutes and common law doctrines being specifically applied to such a relationship. However, the relevant legislative history points to an opposite conclusion. The segment of the Senate Committee Report specifically discussing the contours of § 2806 explained in some detail why § 2806 would not always preempt "state-granted *rights* of assignability." S.Rep. No. 731, 95th Cong., 2nd Sess. 42–43, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 901. The law of assignment is a traditional area of the common law of contracts; *the fact that the Committee felt constrained to explain the ramifications of § 2806 for one set of common law rights implies that Congress contemplated coverage of generalized state laws when appropriate.*

(Footnotes omitted) (emphasis added).

7. The court in *Bellmore* in a footnote refers to *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1221 (7th Cir.1982) "where the court recognized the remedial nature of the PMPA, and noted that 'the Act must be given a liberal construction consistent with its overriding purpose to protect franchisees.'" *Bellmore v. Mobil Oil Corp.*, 783 F.2d at 304 n. 3.

PMPA. However, in *Amoco Oil v. Burns,* 496 Pa. 336, 437 A.2d 381 (1981), which dealt with a nonrenewal controversy in a continuing lease, the Pennsylvania Supreme Court observed that the PMPA "will supersede and preempt any state statute covering the same subject matter in cases after its effective date, June 19, 1978. 15 U.S.C. § 2806(a)." *Id.,* 496 Pa. at 496 n. 16, 137 A.2d at 384 n. 16.[8]

Section 2802 of the PMPA provides in relevant part: (b)(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

. . . .

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable. . . .

(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

. . . .

(4) *loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—*

(A) *of the duration of the underlying lease,* and

(B) of the fact that such underlying lease might expire and not be renewed during the term of such

**8.** In a recent case concerning a franchisor-franchisee relationship of more than one year, *Loos & Dilworth v. Quaker State Oil Refining,* 347 Pa.Super. 477, 500 A.2d 1155 (1985), the court confined itself to the issue on appeal, an erroneous jury instruction. Subject matter jurisdiction was never an issue in this case. *See Loos & Dilworth v. Quaker State Oil Refining Corp.,* 44 Bucks County L.Rep. 7, 9 (Ct.C.P. 1984).

francise (in the case of termination) or at the end of such term (in the case of nonrenewal).

15 U.S.C. § 2802(b)(2)(C), (c)(4) (emphasis added).

In the instant case, Mobil's lease with Mr. Pilotti terminated, and, as a result, Mobil was unable to grant possession of the premises to appellant. The PMPA expressly makes loss of a franchisor's right to grant possession of the leased premises a "reasonable" ground for nonrenewal. *See* 15 U.S.C. § 2802(b)(2)(C) and (c)(4). *See also Ricco v. Shell Oil Company,* 180 N.J.Super. 399, 434 A.2d 1151 (1981) (loss of right to grant possession through expiration of underlying lease is event deemed to be reasonable and not arbitrary or discriminatory within purview of PMPA, where franchisor gave notice to franchisee of expiration date of underlying lease).

We note, however, that the foregoing statutory nonrenewal provisions do *not* apply to "trial franchises." *See* 15 U.S.C. § 2803.[9] Thus, the strict notice requirements of § 2802, which protect franchisees from arbitrary and discriminatory termination or nonrenewal, would not apply here if, in fact, a trial franchise was created.

Both parties here refer to the agreement in question as a "Trial Franchise Agreement." In order to create a trial francise under the PMPA, the following requirements must be met: (1) the agreement must be entered into on or after June 19, 1978; (2) the franchisee must not previously have been a party to a franchise with the franchisor; (3) the initial term of the agreement must be for a period of not more than one year; and (4) the agreement must be in writing. Moreover, the agreement must "clearly and conspicuously" state: (1) that it is a trial franchise; (2) the duration of the agreement; (3) that the franchisor may fail

9. The pertinent part of section 2803 provides:
   **§ 2803. Trial and interim franchises**
   (a) Nonapplicability of statutory nonrenewal provisions. The provisions of section 102 [15 U.S.C.A. § 2802] shall not apply to the nonrenewal of any franchise relationship—
   (1) under a trial franchise; or
   (2) under an interim franchise.

to renew the franchise at the conclusion of the initial term by notification pursuant to § 2804;[10] and (4) that the provisions of § 2802 are not applicable to such a trial franchise.

**10.  § 2804.  Notification of termination or nonrenewal of franchise relationship**

**General requirements applicable to franchisor**

(a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

**Additional requirements applicable to franchisor**

(b)(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section—

(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable; and

(B) in the case of leased marketing premises, such franchisor—

(i) may not establish a new franchise relationship with respect to such premises before the expiration of the 30-day period which begins—

(I) on the date notification was posted or personally delivered, or

(II) if later, on the date on which such termination or nonrenewal takes effect; and

(ii) may, if permitted to do so by the franchise agreement, repossess such premises and, in circumstances under which it would be reasonable to do so, operate such premises through employees or agents.

(2) In the case of any termination of any franchise or any nonrenewal of any franchise relationship pursuant to the provisions of section 2802(b)(2)(E) of this title or section 2803(c)(2) of this title, the franchisor shall—

(A) furnish notification to the franchisee not less than 180 days prior to the date on which such termination or nonrenewal takes effect; and

(B) promptly provide a copy of such notification, together with a plan describing the schedule and conditions under which the franchisor will withdraw from the marketing of motor fuel through retail outlets in the relevant geographic area, to the Governor of each State which contains a portion of such area.

**Manner and form of notification**

(c) Notification under this section—

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

As stated above, in failing to renew a "trial franchise," the franchisor need not comply with the provisions of § 2802. Instead, "the franchisor may fail to renew the franchise relationship at the conclusion of the initial term stated in the franchise by notifying the franchisee, in accordance with the provisions of section 2804 ... of the franchisor's intention not to renew the franchise relationship." 15 U.S.C. § 2803(b)(1)(D)(iii). However, § 2804 is relevant only if a "trial franchise" was created.

The case of *Wojciechowski v. Amoco Oil Co.*, 483 F.Supp. 109 (D.Wis.1980) is instructive. In *Wojciechowski*, plaintiff met with an Amoco representative, Mr. Bond, to discuss the possibility of becoming a franchisee. At the meeting, Mr. Bond told plaintiff that the law required Amoco to treat plaintiff as a "trial franchise." Plaintiff objected to this, but was advised that if he did not agree to a trial franchise, he would not be granted a franchise. To mollify him, Mr. Bond advised plaintiff that the franchise would be renewed if plaintiff performed adequately. Upon such representations, plaintiff entered into an agreement on January 28, 1979, which on its face created a "trial franchise."

On September 6, 1979, plaintiff received from Amoco a notice of nonrenewal. The notice failed to give reason for

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefore;

(B) the date on which such termination or nonrenewal takes effect; and

(C) the summary statement prepared under subsection (d) of this section.

**Preparation, publication, etc., of statutory summaries**

(D)(1) Not later than 30 days after June 19, 1978, the Secretary of Energy shall prepare and publish in the Federal Register a simple and concise summary of the provisions of this subchapter, including a statement of the respective responsibilities of, and the remedies and relief available to, any franchisor and franchisee under this subchapter.

(2) In the case of summaries required to be furnished under the provisions of section 2802(B)(2)(D) of this title or subsection (c)(3)(C) of this section before the date of publication of such summary in the Federal Register, such summary may be furnished not later than 5 days after it is so published rather than at the time required under such provisions.

nonrenewal, and was therefore defective. *See* 15 U.S.C. § 2804(c). The court granted plaintiff equitable relief, and, in effect, deprived defendant of the right to treat plaintiff as a "trial franchise." Amoco was thus made to comply with the requirements of § 2802 before the nonrenewal could take effect. The court recognized that defendant lost its right to rely on a claim of "trial franchise" because of a mere technical violation. However, in reaching this result, the court considered certain misrepresentations which induced the plaintiff to enter into the "trial franchise." The court held that if a franchisor intentionally misleads a franchisee into signing a "trial franchise," the benefits of § 2803(b)(1) are lost and a "trial franchise" is not created.

We agree with this reasoning. We find that state law is preempted by the PMPA only to the extent that it is inconsistent with the PMPA. Appellant's claims of fraud and misrepresentation are neither covered by nor inconsistent with the PMPA.

If the agreement between Mr. Johnson and Mobil was the result of fraud and misrepresentation, Mobil is estopped from claiming that the agreement was a "trial franchise." If in fact a "trial franchise" was *not* created, Mobil must comply with the requirements of § 2802. If Mobil has not complied with § 2802, appellant's remedies are set forth in § 2805.[11] If the franchise relationship between Mobil and

---

11. 15 U.S.C. § 2805 provides in part:
§ 2805. Enforcement provisions
(a) Maintenance of civil action by franchisee against franchisor; jurisdiction and venue; time for commencement of action. If a franchisor fails to comply with the requirements of section 102 or 103 [15 U.S.C. §§ 2802 or 2803], the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action may be maintained unless commenced within 1 year after the later of—
  (1) the date of termination of the franchise or nonrenewal of the franchise relationship; or
  (2) the date the franchisor fails to comply with the requirements of section 102 or 103 [15 U.S.C. §§ 2802 or 2803].

appellant is determined to be a "trial franchise," there does not appear to be any question that Mobil has complied with the notification provisions of § 2804. We remand to the trial court for a determination of these issues.

## II

There is no controlling case law in Pennsylvania on the issue of whether federal courts have exclusive jurisdiction over actions brought under the PMPA. The trial court, in dismissing Count III for lack of jurisdiction, relied on *Rustom v. Atlantic Richfield Co.*, 618 F.Supp. 210 (C.D.Cal. 1985). In *Rustom,* the court observed that although "there is a presumption that a state court has concurrent jurisdiction over actions arising under a federal statute ... that presumption may be rebutted 'by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests.' " *Id.* at 212 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981)).

The *Rustom* court analyzed the legislative history of the PMPA and concluded that Congress intended to give federal courts exclusive jurisdiction over actions brought under the PMPA. In its analysis, the court points out that both the Senate and House Reports refer only to the maintenance of an action under the PMPA in federal court: " 'The provisions of Title I are enforceable by private civil action in U.S. District Court.' S.Rep. No. 95–731, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 874; H.R.Rep. No. 95–161, 95th Cong., 1st Sess. 14." 618 F.Supp at 212. The court further notes that there is a "conspicuous absence" of any reference to the bringing of PMPA actions in state court. *Id.* To further support its conclusion, the *Rustom* court notes that the PMPA incorporates standards under the Federal Rules of Civil Procedure for the award of damages and for the issuance of preliminary injunctions.

Appellant relies on *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163 (D.Conn.1979), arguing that § 2805(a) states only that "the franchisee may maintain a civil action … [and] such actions *may* be brought in the District Court of the United States," but not that it *must* be brought in federal court. *See also Berg v. Watson*, 417 F.Supp. 806, 808 n. 1 (S.D.N.Y.1976) (holding that state courts have concurrent jurisdiction under the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. § 411, although the Act provides that a suit *may* be brought in federal court).

■■■ The general principle of state-court jurisdiction over cases arising under federal law is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). In considering the propriety of state-court jurisdiction over any particular federal claim, we begin with the presumption that state courts enjoy concurrent jurisdiction. *See California v. Arizona*, 440 U.S. 59, 66–67, 99 S.Ct. 919, 923–24, 59 L.Ed.2d 144 (1979). The presumption is rebutted where Congress has either implicitly or explicitly confined jurisdiction to the federal courts. *Gulf Offshore Co.*, 453 U.S. at 477, 101 S.Ct. at 2875.

In *Dowd*, the issue was whether a federal statute, the Labor Management Relations Act of 1947, divested a state court of jurisdiction. Section 301(a) of the statute provided that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States … without respect to the amount in controversy…." The Court found that this

language "simply gives the federal district courts jurisdiction over suits for violation of certain specified types of contracts ... [it] does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described 'may' be brought in the federal district courts, not that they must be." *Dowd,* 368 U.S. at 506, 82 S.Ct. at 522.

Nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. The doctrine of state concurrent jurisdiction is embedded in our judicial history. As early as *The Federalist No. 82,* Alexander Hamilton wrote:

"[T]he State Courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and I am even of opinion that in every case in which they were not expressly excluded by the future Acts of the National Legislature, they will, of course, take cognizance of the causes to which those Acts may give birth."

*The Federalist No. 82,* at 493 (A. Hamilton) (C. Rossiter ed. 1961).

The First Congress apparently agreed. In the Judiciary Act of September 24, 1789, Congress was careful to delineate jurisdiction among courts established by the Act, and, as Justice Bradley noted in *Claflin v. Houseman,* 93 U.S. (3 Otto) 130, 139, 23 L.Ed. 833 (1876): "[there was] a constant exercise of the authority to include or exclude the State courts ... it was assumed, in our early judicial history, that the State courts retained their usual jurisdiction concurrently with the Federal courts invested with jurisdiction in like cases."

Concurrent jurisdiction has been a common phenomenon in our judicial history. *See Dowd, supra; Galveston, H & S.A.R. Co. v. Wallace,* 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516 (1912); *Claflin, supra.* In a more recent case, *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Supreme Court, in ruling

that federal courts do not have exclusive jurisdiction over personal injury and indemnity cases arising under the Outer Continental Shelf Lands Act (43 U.S.C. §§ 1331 et seq.), acknowledged the presumption of concurrent jurisdiction. The Court noted that this presumption is premised on the relation between the states and the federal government within our federal system. Justice Powell, speaking for the Court, went on to reiterate that "[i]t is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." 453 U.S. at 479, 101 S.Ct. at 2875 (*citing U.S. v. Bank of New York & Trust Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936)).

■ We see no reason for precluding a state from adjudicating a contractual claim arising under the PMPA, especially where, as here, we deal with a clear dictate of federal law. As noted above, the presumption of concurrent jurisdiction can be rebutted by explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. The PMPA does not expressly limit jurisdiction to federal courts, and we find no clear indication of exclusive jurisdiction in the legislative history. Finally, we perceive no incompatibility between state-court jurisdiction and promoting Congress' intent to protect the needs of both franchisees and franchisors, to remedy disparity in bargaining power and to prevent arbitrary or discriminatory termination or non-renewal. For the foregoing reasons, we find that a state court enjoys concurrent jurisdiction over claims brought under the PMPA. *See Ricco v. Shell Oil Co.*, 180 N.J.Super. 399, 434 A.2d 1151 (1981); *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114 (D.C.Conn.1980).

Summary judgment as to Counts I and II is reversed. Order dismissing Count III for lack of jurisdiction reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.