GREGG AMOS, Indiv. and d/b/a Gregg's A-Team Shell, Inc., *et al.*, Counterclaimants-Appellants, v. SHELL OIL COMPANY, Counterdefendant-Appellee.

First District (4th Division)   No. 1—92—0824

Opinion filed May 27, 1993.

Donald E. Amos, of Chicago, for appellants.

Tribler & Orpett, P.C., of Chicago (Douglas C. Crone and Panos T. Topalis, of counsel), for appellee.

JUSTICE CAHILL delivered the opinion of the court:

We address the impact of the Federal Petroleum Marketing and Practices Act (PMPA) (15 U.S.C. §2801 *et seq.* (1978)) on the right of oil companies to abruptly terminate franchise agreements with gasoline service stations and to repossess the station when the operator defaults on his obligations. We hold that under certain circumstances an oil company may unilaterally terminate a franchise agreement, repossess a service station, and lock out an operator who engages in fraudulent conduct. We further hold that the PMPA preempts the Illinois Forcible Entry and Detainer Act (Ill. Rev. Stat. 1987, ch. 110, par. 9—102) in disputes that arise out of franchise leases between a national gasoline distributor and its local retailers. In so doing, we affirm the decision of the trial court.

After receiving numerous bad checks from Amos, but before filing suit, a Shell area manager and an armed private security guard closed and repossessed the station from which Amos did business. The Shell Oil Company then sued Gregg Amos and Gregg's A-Team Shell, Inc., for money owed on the gasoline deliveries for which Amos had tendered the dishonored checks. Amos counterclaimed, alleging that Shell violated the Illinois Forcible Entry and Detainer Act (Ill. Rev. Stat. 1987, ch. 110, par. 9—102) and the Federal Petroleum Marketing Practices Act (15 U.S.C. §2801 *et seq.* (1978)) when it repossessed the gas station. After a bench trial, the judge entered judgment for Shell and rejected Amos' counterclaims.

Amos appeals the trial court's ruling, making two arguments: (1) that Shell violated various provisions of the PMPA and a franchise agreement when it repossessed the gas station; and (2) that the PMPA does not preempt the Illinois Forcible Entry and Detainer Act and, therefore, that Shell violated Illinois law.

Amos operated a gas and service station in Chicago under a franchise agreement with Shell signed in 1984. Between March 9 and March 28, 1988, Amos wrote 15 insufficient fund checks to pay for gasoline from Shell. They totalled approximately $122,000. At the time, Shell's delivery drivers were under instructions to accept only cash or certified funds from Amos for gasoline deliveries. Amos physically altered eight of the insufficient fund checks, either by imprinting them or punching holes in them, so that they would appear to be certified.

On March 30, 1988, Frank Katic, Shell's area manager in charge of Amos' station, met with Amos to discuss the checks. The parties did not reach a resolution, but they agreed to meet the following day. On the afternoon of March 30, Katic went to the Chicago police department financial crimes unit and informed them that Amos had written the bad checks. He arranged for two police officers to be with him when he met with Amos the following day. One of the policemen testified that they went to the meeting with the intention of arresting Amos.

Amos brought $12,000 in cash to the meeting on March 31, 1988, allegedly the first installment of a payment plan on the insufficient funds checks that would permit him to continue to operate the station. Katic informed Amos that his relationship with Shell was terminated because of the bad checks. The two police officers then arrested Amos. They confiscated the $12,000 and a gun Amos carried in a briefcase. The $12,000 was subsequently credited to Amos' delinquent account with Shell, but the record is silent on how this occurred. That same day, Katic mailed a certified letter to Amos notifying him that the franchise was terminated.

The next day, April 1, 1988, Katic arrived at the gas station with an armed security guard. Amos was not present. Katic ordered the employees out of the station and closed it. The incident was peaceful, and the employees were not physically threatened. At least one employee, however, testified that the presence of the armed security guard intimidated him.

For several days after the station was closed, Katic and one of Amos' employees conducted an inventory. Shell gave Amos a credit on the amount owed for equipment repossessed and returned Amos' personal belongings.

Amos pled guilty to the criminal charges brought against him for intentionally writing bad checks. The court placed him on probation and ordered him to pay Shell the amount he owed it on the bad checks minus his credits as restitution. Shell subsequently brought this civil proceeding to obtain a judgment for the amount owed. To date, Amos has not paid any of the money owed to Shell.

Amos first argues on appeal that the termination of his franchise was unreasonable, and even if reasonable, that it lacked adequate notice under the PMPA. The PMPA provides that a franchise may be terminated if an event occurs which is relevant to the franchise relationship and if such termination would be reasonable. (15 U.S.C.A. §2802(b)(2)(C) (West 1978).) The Act defines relevant events to include fraud or criminal misconduct by the franchisee in operating the marketing premises, and failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled. (15 U.S.C.A. §§2802(c)(1), (c)(8) (West 1978).) Because the evidence is uncontradicted that Amos wrote 15 insufficient funds checks and altered eight of them so that they would appear to be certified, we find that the termination was reasonable under the PMPA.

■ Notice that a franchise is to be terminated normally must be given to the franchisee at least 90 days before the date of termination. (15 U.S.C.A. §2804(a)(2) (West 1978).) The Act provides, however, that if notice 90 days before termination would not be reasonable, then the franchisor may provide less than 90-day notice if given on the earliest date reasonably practicable. 15 U.S.C.A. §2804(b)(1)(A) (West 1978).

■ We find that it would not have been reasonable to require Shell to give Amos notice of termination on March 31 and then to wait 90 days before closing the station. Given Amos' past behavior, the delay would have unfairly put Shell at risk.

We also find notice was given as early as was reasonably practicable under the circumstances. The record revealed that Shell's area manager was out of town when Amos wrote the checks and that he gave notice of termination to Amos within one day of returning. Under these circumstances, we find that the notice was given at the earliest practicable date and therefore in compliance with the requirements of the PMPA.

Amos cites numerous cases where courts have upheld notice of less than 90 days, but observes that in each of these cases the franchisee was given some amount of time to cure the default before termination. (See, *e.g., Amoco Oil Co. v. D.Z. Enterprises, Inc.* (E.D.N.Y. 1985), 607 F. Supp. 595, 601-02; *California Petroleum Distributors, Inc. v. Chevron U.S.A., Inc.* (E.D.N.Y. 1984), 589 F. Supp. 282, 289 n.2.) We note that the PMPA requires time to cure only if termination is sought be-

cause of the franchisee's failure to exert good-faith efforts to carry out the provisions of the franchise agreement. (15 U.S.C.A. §2802(b)(2)(B)(i) (West 1978); *Glenside West Corp. v. Exxon Co., U.S.A., Division of Exxon Corp.* (D.N.J. 1991), 761 F. Supp. 1100, 1117.) If termination is sought for one of the enumerated events "relevant to the franchise relationship," then no right to cure exists. (15 U.S.C.A. §§2802(b)(2)(C), (c) (West 1978); *Glenside West Corp.*, 761 F.Supp. at 1117; *Wisser Co. v. Mobil Oil Corp.* (2d Cir. 1984), 730 F.2d 54, 59 ("[T]he proposition that a franchisee always has the right to cure a default is obviously wrong").) Given Amos' behavior, Shell acted reasonably in immediately stemming the flow of bad checks from Amos' enterprise. No time to cure was required, nor would it have been intelligent, under the circumstances. See *Wisser*, 730 F.2d at 61 (zero days' notice upheld); *Loomis v. Gulf Oil Corp.* (M.D. Fla. 1983), 567 F. Supp. 591, 597 (three days to cure before termination upheld); but see *Escobar v. Mobil Oil Corp.* (D. Conn. 1981), 522 F. Supp. 593, 600 (outside action by agency is necessary to justify less than 90 days' notice), *rev'd on other grounds* (2d Cir. 1982), 678 F.2d 398.

◼ Amos next argues that seizure of the station violated the Illinois Forcible Entry and Detainer Act, which provides: "No person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he or she shall not enter with force, but in a peaceable manner." (Ill. Rev. Stat. 1978, ch. 110, par. 9—101.) He stresses that self-help is not the law of Illinois, and that those with a right to property who are not in possession must obtain a court order to repossess.

Shell responds that the PMPA preempts the Illinois law. We agree. Section 2806 of the PMPA reads in relevant part:

"To the extent that any provision of this subchapter applies to the termination *** of any franchise *** no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation *** with respect to termination *** of any such franchise *** unless such provision of such law or regulation is the same as the applicable provision of this subchapter." 15 U.S.C.A. §2806 (West 1978).

The Act also provides that upon termination, the franchisor may repossess leased premises if the franchise agreement so provides. (15 U.S.C.A. §2804(b)(1)(B)(ii) (West 1978).) The motor fuel station lease signed by the parties in 1987 provides in section 10.2: "Following any termination or the expiration of this lease, (a) Shell may reenter and repossess the Premises, without prejudice to any other rights or remedies provided hereunder or by law ***." The PMPA, read together with

the franchise agreement, creates in Shell a right to reenter and repossess the leased premises without a court order. Since the Illinois Forcible Entry and Detainer Act is inconsistent with this remedy, it is preempted by Federal law.

The cases cited by Amos for the proposition that the Illinois law is not preempted are clearly distinguishable. In cases where preemption has not been found, the PMPA and the State law were not in conflict. (See *Bellmore v. Mobil Oil Corp.* (2d Cir. 1986), 783 F.2d 300, 305; *Webber Oil Co. v. Murray* (Me. 1988), 551 A.2d 1371, 1374; *Johnson v. Mobil Oil Corp.* (1987), 364 Pa. Super. 275, 283, 286-90, 528 A.2d 155, 159, 161-63, *rev'd on other grounds* (1989), 522 Pa. 105, 560 A.2d 124; *E.S. Bills, Inc. v. Tzucanow* (1985), 38 Cal. 3d 824, 828 n.4, 700 P.2d 1280, 1282 n.4, 215 Cal. Rptr. 278, 280 n.4.) In cases where an inconsistency between State law and the PMPA has been found, the case law uniformly holds that the State law is preempted. (See *Brach v. Amoco Oil Co.* (N.D. Ill. 1983), 570 F. Supp. 1437, 1442-43; *Mobil Oil Corp. v. Superior Court* (1987), 189 Cal. App. 3d 485, 234 Cal. Rptr. 482; *California Arco Distributors, Inc. v. Atlantic Richfield Co.* (1984), 158 Cal. App. 3d 349, 204 Cal. Rptr. 743; *Ricco v. Shell Oil Co.* (1981), 180 N.J. Super 399, 434 A.2d 1151.) Because there is an inconsistency in this case, preemption occurs and Shell did not violate the PMPA or the Illinois law.

In finding for Shell, the trial court expressed concern over the behavior of the corporation. We share this concern. If Amos had not intentionally defrauded Shell, his creditor, then the actions of Shell in immediately terminating the franchise would not have met the notice requirements of the PMPA as we construe the case law. The reasonableness of less than 90 days' notice of termination is to be determined on a case-by-case basis under the particular circumstances of each case. (*Marathon Petroleum Co. v. Pendleton* (N.D. Ohio 1988), 689 F. Supp. 739, 744, *aff'd* (6th Cir. 1989), 889 F.2d 1509.) Thus, our holding today that less than 90 days' notice was reasonable is limited to the peculiar facts of this case.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.